The last case being argued today is Pager et al. v. Greater Northern Insurance Company. Mr. Pager, you're reserved two minutes for rebuttal. You can begin whenever you're ready. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. Good morning, and we are the appellants, obviously. Your Honors, we take at least two issues with the order of the lower court, which granted summary judgment to the insurance company. The court had based its decision on two factors that I believe are incorrect. Number one, the court had found that the insurance company's coverage counsel, which was pre-litigation, had mailed and had served us with certain pre-litigation demands that included a form. I think the record is fairly clear that whatever the coverage attorney did, those documents didn't make their way to us. Well, you simply denied that you received them, right? More than that, Your Honor. The record contains a certified return receipt card signed by somebody else. Right. Well, it was delivered during the period of time of COVID, right? That's the question. There's no indication that it was delivered. What there is is an indication that somebody had signed it and counsel for the insurance company had offered two levels of speculation. Number one, he said, oh, I'm sure it had to have been the letter carrier who signed it. But that was, he said, essentially, that he's speculating. And number two, he said, well, we should also assume that since I'm assuming it was the letter carrier, we also should assume that he had delivered it to the appropriate address. And I think there's no indication of any of that. But I think I also have a much larger and I believe a more... I thought Mrs. Pager said she recalled receiving the letter in duplicate, but didn't receive the blank forms. Isn't that accurate? I'm fairly positive. Joint Appendix 214? I recall receiving a letter regarding the EUO in duplicate, right? Correct. There were a number of letters sent. At some point, my law firm had basically informed the insurance company that we're going to be representing. There was never any documents sent to us that are relevant to this particular summary judgment motion. Let me ask you this. Even when Mr. Fite explains that you need to comply with the remaining obligations at the examinations under oath, and that a failure to do so could relieve them of their obligations. And even after that, the sworn proof of law statement wasn't provided. It was not provided to us, Your Honor. There was no... No, but you knew of the obligation at that point for sure, right? We heard the words uttered by Mr. Fite. There was no indication that said, here is a... There were 17 separate items of discovery that were sought by Mr. Fite. Most of them were outrageous, as the magistrate judge had recognized. They were asking for my documents, for banking for my clients, for my law practice. They were just outrageous. Which leads me to my next point, Your Honor. We had a conference on 10-11-22, in front of the magistrate judge, and all these issues were very much aired out. I said to the court, first, Your Honor, there's been a number of demands issued by the insurance company, and I'd like to address them. She said, and it's in the record, whatever was sent to you earlier, you don't have to respond to. Well, but that's you don't have to respond to for discovery. No, no, no. You'd already suited out. Pardon? You'd already... You're already in litigation. No. What were you doing in front of a magistrate then? Okay, we were already in litigation. The answer is yes. The answer is yes. You were already in litigation. But, we had directly addressed what had transpired in pre-litigation. If you'll see in the record... The magistrate can't rewrite the insurance policy? The magistrate judge issued a direct order. How does the magistrate waive a requirement in the policy with regard to for you to invoke coverage? The same way the magistrate judge... That doesn't make any sense, Mr. Pager. It doesn't. Your Honor, I'll have to respectfully disagree. As the... Obviously, I won't change your mind if you're of that impression. But, Your Honor... It's not an impression. It has to be what the law is. Your Honor, we, both sides, have submitted this issue to the court. Both sides have addressed... That's not a ruling. It's a talk about discovery with regard to what you needed to produce. Mr. Passarelli, who was the attorney representing the insurance company, addressed those very forms that... Did the magistrate issue a report in which the magistrate specifically said that the requirement of you filing a proof of loss had been waived? The magistrate judge said she's streamlining and she is narrowing. Answer my question. Yes. Did the magistrate issue a report, a recommendation to the district court, in which the magistrate judge ruled that the requirement of filing a proof of loss had been waived? There was no specific order like that. No is the answer to that. No is the answer, Your Honor. Thank you. That said, Your Honor, there was also an order that says she's streamlining and she's cutting down the...  No, Your Honor. It's specifically... Okay. Your Honor, if I may point you... I'll read it. Don't waste your time on that. I will not waste my time on it. I will just point you to, we had specifically discussed pre-litigation discovery. We discussed, and I underline it in my brief, the proof of fraud law firms...  I know that, Your Honor. I'm just saying this had been discussed specifically as it applied to all the issues that the district court had focused on. Okay. And the magistrate judge ruled on that, Your Honor. Okay. All right. Your Honor, I think most of my arguments are in my brief. So if there's no questions, I'll just wait to respond. Great. Thank you. Mr. Furland. Good morning, Your Honors. May it please the court, my name is Paul Furland. I represent the defendant Great Northern Insurance Company in this matter. I just wanted to, I'm obviously happy to take any questions you may have. I just want to point out a couple of things based on Mr. Pager's papers and his argument here. The argument about what magistrate judge Bloom did or did not do, the words proof of loss never appear in the transcript at all, number one. Number two, the claim was, and in his papers, I believe the exact words he uses are long before the claim was denied, Judge Bloom addressed these issues and apparently waived, according to him, his obligation to comply with the proof of loss. However, the record is that disproves that statement. The claim was denied in May of 2022. And this conference took place in October of 2022. So essentially what Mr. Pager's arguing without any authority is that magistrate judge Bloom could have not only relieved him of the obligation to do so, but overturned the insurer's coverage determination without any briefing at all. And obviously, there's no law that would support that. In addition, I would point out that the lawsuit was filed in September of 2021. And shortly after that, I believe it was November of 2021, Great Northern had filed a pre-motion conference letter seeking the court's permission to file a motion to dismiss based in large part on this proof of loss issue. So a year prior to that conference, everyone was aware that Great Northern was going to make a motion regarding the Pager's failure to comply with the proof of loss requirement. So it's quite a stretch, I would argue, that magistrate judge Bloom would then, knowing that, say, you don't have to comply with the proof of loss requirement. And then the last point I wanted to mention is regarding the letter that he did not receive. And I think Your Honor noted that in the examinations under oath, both Mr. Pager and his wife were provided with information and shown the letter saying that you have to comply with this. And the last thing to point out is to this day, the proof of loss form was never submitted. So I think those are really the only points I wanted to make and I'm happy to address anything the court might have. Any questions? Great, thank you. Mr. Pager, you have two minutes in rebuttal. Thank you, Your Honor. Just very briefly about that conference. During the examinations under oath, which as Your Honors know, we had complied with, what had happened was Mr. Fite, the coverage attorney, waved documents at us over Zoom. So this was not a document that was handed to us, said, please fill it out. It was not a document that was sent to us with the indication, please fill it out and return it to us. This was, to the degree that the forms were addressed, the forms were shown to us over Zoom and said, well, there's 17 demands here. There was no particular focus on the proof of loss, which is apparently a major sticking point with the lower court and Your Honors apparently. I will also just point out a little bit of an inaccuracy in what counsel had said. I think the impression Mr. Freland was making was that the proof of loss was not raised in that conference with the magistrate judge. And I would just point you to the place in the record on SA 72. I'm sorry, can I just go back? I'm just looking at the, I guess it's the deposition of your wife. And there's all this talk about something marked Exhibit A. Do you see Exhibit A in front of you? I'm going to go through all the pages. I'm going to ask if you've seen it before. We're going to walk through all the paragraphs. You're saying that that was simply waved around? That there was no Exhibit A? No, no, I'm not saying that, Your Honor. People were walking through? No, Your Honor. What happens during these depositions and examinations currently is they're displayed over a computer screen. So they're not in front of you. They're not handed to you. They're not given to you. So please fill it out. But it's not waved around in the sense that nobody could see what anyone's talking about. When your wife was answering the questions about saying, yes, I've seen it, and yes, I'm walking through the paragraphs, you're not suggesting that she couldn't really see it? No, I'm saying we were never given the document. So you're saying that she was shown it on a screen, but she was not handed it physically? That's the distinction? Why is that a distinction that's relevant? I'm not sure I'm following. If she read through it, why is the lack of a physical copy in her hand relevant? I'll explain. If that's the point you're trying to make. It's one of the points that I was trying to make. And the reason is, the impression is that we had been afforded a possibility of filling out this form yet again. And the impression is that here we hand it to you, here we mailed it to you, here we delivered it to you, and that just never happened. The most they could say is, we showed it to you over Zoom. Got it. All right. We'll reserve decision. Thank you both. Have a good day. Thank you.